KOWALCZYK ET AL., APPELLEES AND CROSS-APPELLANTS, *v.* STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, APPELLANT AND CROSS-APPELLEE.

(No. 4053—Decided November 19, 1986.)

*Michael F. Becker,* for appellees.
*James L. Miraldi,* for appellant.

BAIRD, J. This cause came on before the court upon the appeal of State Automobile Mutual Insurance Co. ("State Auto") from the trial court's order entering summary judgment for Olga and Leo Kowalczyk. The trial court declared that State Auto was not entitled to a setoff in the amount of the Kowalczyks' recovery from the tortfeasor's insurance. We vacate and remand.

The Kowalczyks had a policy of automobile insurance with State Auto. Their policy included liability, medical payments and uninsured motorist coverage. Mrs. Kowalczyk was injured in an automobile collision; she suffered severe and permanent injuries and her husband suffered loss of consortium. The parties stipulated that her damages were in excess of $75,000.

The Kowalczyks recovered $25,000 from the tortfeasor's insurance company; this figure represented the total recovery under both of their claims.

The parties disagreed over whether the Kowalczyks each had $50,000 in available coverage and whether State Auto was entitled to a setoff of the Kowalczyks' recovery from the tortfeasor.

The Kowalczyks filed an action for a judgment declaring (1) that Leo and Olga each had available $50,000 in coverage, and (2) that State Auto was not entitled to a setoff. The parties filed motions for summary judgment. The parties agreed that $50,000 of coverage was available to each of the insureds. The trial court declared that State Auto could not set off the Kowalczyks' recovery from the tortfeasor. State Auto appeals; the Kowalczyks have filed cross-assignments of error.

### Assignment of Error I

"Where an insurance policy states that the limit of liability for underinsurance 'shall be reduced by all sums paid by or on behalf of persons or organizations who may be legally responsible,' such provision does not result in a situation where the insured receives less total compensation than had the injury been caused by an uninsured motorist. Therefore, the provision is valid. It is not contrary to section 3937.18 of the Ohio Revised Code."

### Cross-Assignment of Error I

"When an endorsement provides different limits of liability for underinsurance and uninsurance claims, such is violative of public policy and is therefore invalid."

The trial court invalidated the entire endorsement PP 04 82 based upon the holding in *James* v. *Michigan Mut. Ins. Co.* (1985), 18 Ohio St. 3d 386, 18 OBR 440, 481 N.E. 2d 272. A thorough review of the holding in *James* mandates the opposite conclusion: the endorsement provided for a valid setoff.

In *James,* the Ohio Supreme Court held, at paragraph two of the syllabus:

"An insurer may apply payments made by or on behalf of an underinsured motorist as a setoff directly against the limits of its underinsured motorist coverage, so long as such setoff (1) is clearly set forth in the terms of the underinsured motorist coverage and (2) does not lead to a result wherein the insured receives a total amount of compensation that is less than the amount of compensation that he would have received if he had been injured by an uninsured motorist."

An otherwise effective setoff provision may be invalid under *James* where the setoff provision either is somehow hidden or obscure, or necessarily results in greater recovery under uninsured motorist coverage than under underinsured motorist coverage.

In *James,* the Supreme Court found the setoff provision to be clearly set forth. A review of the policy in this case reveals setoff language virtually identical to that in the Michigan Mutual policy in *James.* Furthermore, in both cases, the setoff was contained in an endorsement. Therefore, the first prong of the *James* test had been met.

Regarding the second prong, the Supreme Court explained that an insurance policy and its setoff provision are acceptable where the policy " * * * provides [the insured] with the same degree of protection under its underinsured and uninsured motorist coverages (*i.e.,* it assures that the [insured], when suffering damages in excess of [the policy limits], will receive at least [the policy limits] in total compensation — regardless of whether he is injured by an underinsured motorist or an uninsured motorist)." *James, supra,* at 390, 18 OBR at 443, 481 N.E. 2d at 275.

The policy in this case, with respect to underinsured motorist coverage, includes endorsement PP 04 82

which provides that " * * * the limit of liability shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. * * *"

With respect to uninsured motorist coverage, the endorsement also provides that " * * * any amounts otherwise payable for damages under this coverage shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. * * *"

While it is possible for an insured to receive different amounts of compensation through his insurer, depending upon whether he was injured by an uninsured or underinsured driver, the endorsement assures that the insured will receive *at least* the policy limits in total compensation regardless of whether the tortfeasor is an uninsured or an underinsured motorist. Accordingly, the policy and its setoff provision[1] are valid. *James, supra.* The trial court erred in declaring that State Auto was not entitled to setoff.

The first assignment of error is well-taken; the first cross-assignment of error is not well-taken.

### Assignments of Error

"II. A policy that treats each renewal billing as an 'offer' and automatically terminates unless a renewal premium is paid, creates a new contract of insurance each term when the premium is paid. Therefore a policy is 'prepared' each time the new contract goes into effect.

"III. Where an endorsement is required by law to be added to an auto policy, where the endorsement is sent to and received by the insured, where a brochure accompanies the endorsement advising the insured in bold type that the law has been changed and that the policy has been modified accordingly, where the required endorsement is referenced under the 'form applicable' section of the amended declaration page, and where the insured then pays the premium, the intent of the parties was that the endorsement should become a part of the policy notwithstanding space left blank at the bottom of the endorsement."

### Cross-Assignment of Error II

"The trial court erred by failing to base its decision invalidating the endorsement on the ambiguity of the 'effective date, etc.' clause."

These assignments and this cross-assignment of error concern the validity of the same endorsement, PP 04 82; hence, they will be considered together. Essentially, the controversy is over the effect of the blanks in certain boxes in the effective date section of the endorsement.

The bottom of the endorsement page contains the following language:

"The spaces below need not be completed unless this endorsement is issued subsequent to preparation of the policy

"

| Effective date | Date of issue | Issued to | Policy No. |
|---|---|---|---|

"

---

[1] As discussed in *James,* the general principle that an insured must be fully compensated before subrogation will be permitted does not apply to a setoff provision in an underinsured motorist policy.

The above boxes were not completed on the endorsement sent to the Kowalczyks.

It is the Kowalczyks' position that since these boxes were not filled, the endorsement never took effect and, therefore, setoff is permissible only against the damages compensable and not against the limits of liability. It is State Auto's position that the boxes need not have been filled because the endorsement was not issued subsequent to preparation of the policy. This court concludes that the endorsement took effect at the commencement of the new policy term; hence, the boxes need not have been filled.

In determining a motion for summary judgment, a trial court may consider only the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action. Civ. R. 56(C). The record contains relatively few evidentiary materials; however, the evidence before the trial court reveals no genuine issue of material fact and establishes that State Auto was entitled to judgment as a matter of law. The record, as certified to this court, does not contain any affidavit signed by Leo Kowalczyk, nor does the record contain any of the declaration pages, the explanatory pamphlet regarding the addition of "underinsured" motorist coverage, or the policy at issue in *James*. All of the parties have attempted to bring materials to the attention of this court which were not before the trial court. However, this court has considered only those materials which are properly part of the record. App. R. 9 and 12(A).

The policy book issued to the Kowalczyks was before the trial court. Its table of contents reveals that the policy includes the declaration page. The declaration page specifies the vehicles covered, the named insured, the coverages involved, and the forms applicable, including any necessary endorsements. Thus, the contents of the policy are determined in large part by the declaration page. It follows that the policy is prepared anew each time the declaration page is prepared for offer to the insured.

The affidavit of Steve Moulton, State Auto's Vice-President of Products and Pricing, states that:

"Sometime between October 4 through October 9, 1982 [*sic*] and before Kowalczyks' policy renewal term for November of 1982 through May of 1983 began, a copy of the Endorsement PP 04 82 (10-82) was mailed to the Kowalczyks at 764 Middle Ridge Road, Lorain, Ohio 44053, along with explanatory brochure AU-310 (9/82) entitled, 'Understanding Uninsured/ Underinsured Motorists Coverages,' and the revised declaration page specifying the vehicles covered, the named insured, the coverages, the forms applicable which included reference to the Endorsement PP 04 82 (10-82) along with a perforated section which was returned with the premium payment.

"The premium payment and perforated form was [*sic*] received by this company so that the policy in question was in force and effect.

"The policy was renewed again per the terms of the revised declaration page which again referred to the Endorsement PP 04 82 (10-82) for the next six month period commencing on May 2, 1983 and was in effect at the time of the collision of August 17, 1983."

There is no contradictory affidavit from the Kowalczyks.

The record reveals that the endorsement was added when the policy was prepared for the ensuing six-month term. Therefore, it was unnecessary for the effective date section

to have been completed in order for the endorsement to be valid.

The second and third assignments of error are well-taken; the second cross-assignment of error is not well-taken.

### Cross-Assignment of Error III

"The trial court erred by failing to base its decision invalidating the endorsement on the failure of State Auto to explain and point out the limiting effect of the endorsement."

As discussed above, the evidentiary materials before the trial court reveal that the Kowalczyks were sent a pamphlet entitled "Understanding Uninsured/Underinsured Motorists Coverages." Thus, the record does not reflect that the new provisions were not explained.

The third cross-assignment of error is not well-taken.

The judgment of the trial court is vacated and this cause is remanded for entry of judgment for State Auto.

*Judgment reversed and cause remanded.*

QUILLIN, P.J., and GEORGE, J., concur.