FELBER et al., Appellants,

v.

GRANGE MUTUAL INSURANCE COMPANY, Appellee.

[Cite as *Felber v. Grange Mut. Ins. Co.* (1991), 81 Ohio App.3d 122.]

Court of Appeals of Ohio,
Summit County.

No. 15003.

Decided Aug. 28, 1991.

*Kevin E. Brown,* for appellants.

*Frank G. Mazgaj,* for appellee.

CACIOPPO, Judge.

On November 17, 1988, Katherine Felber, seventeen-year-old daughter of Anthony Felber, was one of four passengers in a car driven by Nathan Casenhiser. As a result of Casenhiser's negligence, Casenhiser and another passenger died. The remaining passengers, including Felber, were injured.

A special master appointed by the trial court recommended that Felber receive $200,000 as compensation for her injuries. The total amount of all damages for all of the injured parties recommended by the master exceeded one million dollars. Casenhiser was covered by a single limit $300,000 insurance policy issued by the Westfield Insurance Company ("Westfield"). Westfield deposited the $300,000 with the trial court and the trial court apportioned the $300,000 among the injured parties in proportion to their damages. As a result of this division, Felber received $38,749 for her $200,000 in damages.

At the time of the accident, Felber was covered by an automobile insurance policy issued by Grange Mutual Insurance Company ("Grange"). The Grange policy provided uninsured/underinsured motorist coverage in the amount of $100,000 per person and $300,000 per occurrence. Felber submitted an underinsured motorist claim to Grange, which Grange refused to pay.

As a result of Grange's refusal to pay, Felber filed a complaint for breach of contract against Grange. Both parties moved for summary judgment. On January 31, 1991, the trial court granted Grange's motion for summary judgment. Felber appeals, asserting one assignment of error. We reverse.

## Assignment of Error

"The trial court errored [*sic*] by granting defendant-appellee's motion for summary judgment and denying plaintiffs-appellants' 'motion for partial summary judgment on the issues of the defendant's breach of contract and its violation of Ohio's law.' "

The only question before this court is whether the trial court properly granted summary judgment in favor of Grange, determining that Felber was

not entitled to underinsured motorist coverage. In order to determine whether Felber was entitled to underinsured motorist coverage, we must first determine whether an underinsured vehicle was involved in the accident. If the vehicle was underinsured, Felber is entitled to coverage.

R.C. 3937.18(A)(2) requires that every automobile insurance company provide the following protection:

"Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."

■ The Supreme Court of Ohio recently interpreted R.C. 3937.18(A)(2) in *Hill v. Allstate Ins. Co.* (1990), 50 Ohio St.3d 243, 553 N.E.2d 658, rehearing denied (1990), 51 Ohio St.3d 713, 556 N.E.2d 189. In *Hill*, the court held that "[u]nless otherwise provided by an insurer, underinsured motorist liability insurance coverage is not available to an insured where the limits of liability contained in the insured's policy are identical to the limits of liability set forth in the tortfeasor's liability insurance coverage." *Id.* at syllabus. According to *Hill*, therefore, Felber may only recover if the limits of the Grange policy are not identical to the limits of the tortfeasor's policy or if the Grange policy provides otherwise.

■ Considering the Grange policy first, it does not provide identical coverage under the *Hill* court's interpretation of R.C. 3937.18. In *Hill*, both the insured and the tortfeasor had dual-limit, $50,000–per–person, $100,000–per–occurrence policies. Here, as already indicated, Felber's policy limits were not identical to the tortfeasor's policy limit. Therefore, according to *Hill*, Felber is not precluded from recovering under her Grange underinsured motorist coverage.

This conclusion is supported by the *Hill* court's analysis. The court recognized the "public policy consideration of assuring that those persons injured by an underinsured motorist would receive at least the same amount of total compensation as they would have received had they been injured by an uninsured motorist." *Hill, supra,* 50 Ohio St.3d at 246, 553 N.E.2d at 661,

citing *James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St.3d 386, 389, 18 OBR 440, 442, 481 N.E.2d 272, 275. The *Hill* court recognized that the insured contracted for insurance coverage in the event that a tortfeasor's liability insurance coverage did not compensate him for his injuries, so long as the tortfeasor's insurance limits were less than his own insurance limits. *Id.*, 50 Ohio St.3d at 247, 553 N.E.2d at 662. Specifically in *Hill*, the insured contracted for coverage of $50,000 per person and $100,000 per occurrence. The tortfeasor had insurance which provided identical coverage. Therefore, according to the court, the insured received exactly that for which he contracted with his personal insurance when the tortfeasor's insurance paid the insured the limit of the tortfeasor's policy.

In the case at bar, however, Felber, unlike the plaintiff in *Hill*, did not receive that for which she contracted. Felber contracted with Grange for $100,000 per person up to $300,000 per occurrence. The tortfeasor's insurance provided for $300,000 total coverage without a $100,000 per person provision.

This can be best demonstrated by examining the different results under the tortfeasor's policy and the insured's policy. Under the tortfeasor's policy, Felber recovered only $38,749.09 of the tortfeasor's limit. This amount represented Felber's proportionate amount of the tortfeasor's $300,000 limit as follows: Felber's $200,000 of damages equalled twelve percent of the total damages of all injured parties multiplied by the money available for payment, $300,000 plus interest. Under Felber's policy limits, however, Felber would have recovered the per person limit of $100,000 for her injuries. Felber would recover the greater amount because no claimant could take more than $100,000. Under the tortfeasor's policy, a single claimant recovered over seventy-six percent, over $242,000, of the total available for payment. With a $100,000 per person limit, this claimant could have only recovered $100,000, leaving $200,000 for the other claimants. In this scenario, there would have been enough money for Felber to recover, the per person limit of $100,000. This would provide Felber with the coverage for which she had contracted. This is in contrast to the facts in *Hill* where the insured received the same amount under either scenario because the insured and the tortfeasor contracted for identical coverage limits.

In *Cincinnati Ins. Co. v. Phillips* (1990), 52 Ohio St.3d 162, 165, 556 N.E.2d 1150, 1153, the court, in a plurality opinion, recognized that "it would make no sense for this court to reach the absurd result that an injured party is better off when struck by an uninsured tortfeasor than by a person who possesses liability insurance." If Felber is not allowed to recover under her underinsured motorist coverage, that is precisely the result which will be reached—

Felber will be limited to $38,749.09 rather than $100,000. Had the tortfeasor been uninsured, Felber could recover $100,000.

The appellate cases cited by Grange are not persuasive because of the important factual differences between those cases and the present case. In *In re Estate of Bondurant* (Oct. 31, 1990), Fairfield App. Nos. 35–CA–89, 39–CA–89 and 40–CA–89, unreported, 1990 WL 173356, the plaintiff-appellant sought underinsured motorist coverage against the tortfeasor's insurance after receiving compensation from the tortfeasor's insurance primary coverage. This case is distinguishable because Felber is not seeking dual recovery from the same insurance policy, a fact which the *Bondurant* court considered important in denying recovery.

In the other cases cited by Grange, *i.e., Transamerica Ins. Co. v. Nolan* (Sept. 4, 1990), Warren App. Nos. CA89–12–077 and CA89–12–079, unreported, 1990 WL 127204; *Nationwide Mut. Ins. Co. v. Walden* (June 11, 1990), Butler App. No. CA89–10–143, unreported, 1990 WL 78842, the tortfeasor and insured had policies with identical limits. In these cases the appellate courts properly applied *Hill* and denied underinsured motorist coverage as both policies had identical limits.

Summary judgment may be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Because the rule set out in *Hill* does not apply in this case, as discussed above, Grange was not entitled to judgment as a matter of law. Therefore, the trial court erred in granting summary judgment in favor of Grange. Concomitantly, the trial court erred in denying Felber's motion for summary judgment.

Felber's assignment of error is well taken. The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BAIRD, P.J., and COOK, J., concur.